UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ELIZABETH REDDY,

                Plaintiff,

     v.

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

                Defendant.

Case No. 3:18-cv-02211-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

       Plaintiff Elizabeth Reddy brought this action against defendant Life Insurance Company
of North America ("LINA") pursuant to the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § l 132(a)(l)(B), seeking recovery of unpaid long-term disability ("LTD")
benefits pursuant to the terms of a group policy that LINA issued to her employer, Slalom, LLC
("Slalom").  Compl., ECF 1.  LINA terminated plaintiff's claim in August 2017 and denied her
appeal in 2018.  After plaintiff filed this action, LINA reinstated plaintiff's claim in November
2019 and paid her back benefits.

       The parties disagree on how much prejudgment interest plaintiff should receive on back
benefits.  This issue is presented to the court through plaintiff's Motion for Award of

1 – FINDINGS AND RECOMMENDATIONS

Prejudgment Interest (ECF 42), which should be GRANTED IN PART and DENIED IN PART for the reasons discussed below.

## I.    Prejudgment Interest Under ERISA

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007) (citations omitted). "Whether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (quoting *Shaw v. International Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458, 1465 (9th Cir. 1985)).

In deciding whether to award prejudgment interest, the court considers factors such as whether the financial strain of awarding prejudgment interest would injure other beneficiaries and whether the defendant acted in bad faith. *Shaw*, 750 F.2d at 1459. However, "[p]rejudgment interest is an element of compensation, not a penalty." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). Thus, "[a]lthough a defendant's bad faith conduct may influence whether a court awards prejudgment interest, it should not influence the rate of the interest." *Blankenship,* 486 F.3d at 628.

"Generally, 'the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Blankenship*, 486 F.3d at 628 (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987)). Pursuant to 28 U.S.C. § 1961(a), interest is calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the

Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment."

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Blankenship*, 486 F.3d at 628 (quoting *Blanton*, 813 F.2d

at 1576).

"The court may compensate a plaintiff for 'the losses he incurred as a result of [the

defendant's] nonpayment of benefits.'" *Blankenship*, 486 F.3d at 628 (quoting *Dishman*, 269

F.3d at 988) (alteration in original).  However, as the court in *Langston v. N. Am. Asset Dev.*

*Corp. Grp. Disability Plan* observed, not every case warrants a deviation from the presumptive

interest rate:

> The Court is sympathetic to plaintiff's financial troubles and recognizes that
> interest on plaintiff's back benefits is warranted as an element of compensation.
> However, most, if not all, ERISA plan participants whose benefits are terminated
> suffer financial setbacks as a result, and plaintiff has not demonstrated that the
> equities of her situation warrant departing from the "norm" of awarding interest at
> the T-bill rate.

No. C 08-02560 SI, 2010 WL 330085, at *9 (N.D. Cal. Jan. 20, 2010), *on reconsideration,* 2010

WL 1460201 (N.D. Cal. Apr. 12, 2010).

## II.     Plaintiff's LTD Benefits

LINA paid plaintiff a monthly benefit of $9,310 per month until August 2017.  Kellie

Downey Decl. ¶ 3, ECF 50.  LINA denied benefits as of September 2017.  *Id.*

On March 17, 2018, the Social Security Administration notified plaintiff that she was

eligible to receive $2,368 in monthly Social Security Disability Insurance ("SSDI") benefits, as

well as benefits for her daughter, retroactive to July 2015.  *Id.* ¶ 4; *see id.*, Ex. 2, ECF 50-2.

LINA's policy requires an offset for Social Security benefits.  *Id.* ¶ 5; *see id.*, Ex. 1, ECF 50-1.

LINA calculated plaintiff owed $93,391.03 in overpayments.  *Id.* ¶ 6.

After plaintiff brought this suit, LINA resumed paying her in December 2019. LINA calculated that, with offsets, plaintiff was entitled to a monthly benefit of $5,643 from when it had stopped paying her in September 2017. *Id.* LINA calculated plaintiff's back benefits for the six-month period between September 2017 through February 2018 to be $33,858 ($5,643 x 6). *Id.* ¶ 7. LINA completely offset the period between March 2018 (the month Reddy was informed of her SSDI award) through June 2019 to recover overpaid benefits. *Id.* LINA credited plaintiff with a partial payment of $2,539.97 in July 2019 and full payments for August through November 2019, for a total back-benefit of $58,969.97. *Id.* Plaintiff has received these back-benefits from LINA. *Id.* ¶ 8.

## III.     Slalom Investments

In 2013, plaintiff's employer, Slalom,[1] established Slalom Investments, LP ("Slalom Investments"), and plaintiff became a limited partner by investing ███████ James Mitchell Aff. ¶ 1, ECF 44. In October 2017, two months after LINA discontinued her LTD benefits, plaintiff was offered another opportunity to invest $████ in Slalom Investments. Plaintiff had until March 31, 2018, to accept that offer by making the required $████ investment. Pl.'s Aff. ¶ 7, ECF 45.

Plaintiff claims she was unable to take advantage of the Slalom Investments opportunity because she "remained unable to work," LINA had terminated her LTD benefits as of September 2017, and she had not yet been awarded SSDI. *Id.* ¶ 12(a-c). She also claims that she could not cover her living expenses, which are detailed further below, without using an income tax refund she was anticipating for the 2017 tax year. Plaintiff concluded, "I could not invest given the

---

[1] Plaintiff attest that she "became employed by Slalom, LLC in April 2007, and ha[s] remained an employee of the company ever since." Pl.'s Aff. ¶ 3, ECF 45.

financial instability caused by [LINA's] claim termination, particularly in light of my continuing

inability to work due to disability." *Id.* ¶ 12(d).

According to Slalom's Chief Legal Officer, James Mitchell, investors have "███████"

and "████████████" James Mitchell Aff. ¶ 4, ECF 44. ████████████ are "█

granted by Slalom Investments, LP at a ██████ price of $████ that have value once vested (after

████ years) if there has been any appreciation in the price per ██████ above the ██████ price." *Id.*

Plaintiff's investment of $████ in 2013 resulted in her holding ████████ plus ████

████████████ *Id.* Mitchell attests that since January 1, 2014, the annual price per ████

████████████████████ has been as follows:

```
1/1/2014 - 12/31/2014: +$████ per ████
1/1/2015 - 12/31/2015: +$████ per ████ ████ % ROI
1/1/2016 - 12/31/2016: +$████ per ████ ████ % ROI
1/1/2017 - 12/31/2017: +$████ per ████ ████ % ROI
1/1/2018 - 12/31/2018: +$████ per ████ ████ % ROI
1/1/2019 - 12/31/2019: +$████ per ████ ████ % ROI
```

*Id.* ¶ 6.

By plaintiff's calculations, her total loss is $35,211.94.  She calculates the loss on the

period from December 1 through December 31, 2018, as $18,567.96:

> [E]ach ██████ of a $████ investment pursuant to the 2018 Offer was worth
> $████ on January 1, 2018. From January 1, 2018 through December 31, 2018,
> ████ 's value increased such that each ██████ was worth $████ as of
> December 31, 2018 (a ████ % increase on investment).  Thus, an investment of
> $████ effective January 1, 2018 was worth $████████ as of December 31,
>
> 2018, calculated as follows:
> 2018 beginning value: $████████
> 2018 increase/interest: ████████████████ = ██████(-██ %)
> 2018 end-of-year value: $████████ * ████████ = $43,575

The increase in value in 2018 was **$18,575** ████████ - ████████ .

Mot. 16, ECF 42 (emphasis in original).  For the period between January 1, 2019, through

December 31, 2019, plaintiff calculates the loss as $16,636.94:



The price per ███████ effective January 1, 2020 can be estimated. Historically, ████████'s value has increased ████████████████████████ An estimate can be calculated from the historical return on investment data:

████████████████████████████████████

████████████████ **% average annual increase in return on investment**

Applying this ██████% average, Reddy's loss for the period January 1- December 31, 2019:

1/1/2019 - 12131/2019: +$████████████████

████████████████████ (= +████████% ROI)

2019 end-of-year value: $████████ * ████ = $████████

Increase in value 12/31/18 to 12/31/19: $████████ - $████████ = **$16,636.94**

*Id.* at 18 (emphasis in original).

In response to LINA's argument that this would constitute an "absurd" interest rate of

54.8%, *see* Opp. 6, ECF 49, plaintiff has proffered a spreadsheet showing that if a 12.8%

compound interest rate is applied, her loss would similarly be $35,241.86.  Plaintiff's counsel

explains the calculation was conducted as follows:

For each benefit period for which Cigna withheld Reddy's LTD benefit, I calculated interest by applying the rate of 12.8% to the principal (the amount Cigna withheld for that month), and then compounding the interest annually using the following formula: Future Value = **Principal** x (I + Rate)Time_ The **Principal** is the benefit withheld for the month, the **Rate** is set at 12.8%, and the Time is set at I/ 12, representing one month of annual compounding. I performed these calculations using Google Sheet's "Future Value" formula for each month, deducting the original **Principal** amount from the resulting total.

Glor Suppl. Decl. ¶ 3, ECF 63 (emphasis in original).

Finally, in July 2019, plaintiff was offered another opportunity to invest in Slalom

Investments and accepted that offer.  Pl.'s Aff. ¶ 15, ECF 45; *id.*, Ex. H.

**IV.    Plaintiff's Financial Circumstances**

Plaintiff received monthly spousal support of $12,500, which was taxable and left her with a net monthly amount of $7,500.  Pl.'s 2nd Aff. 2, ECF 61.  Her SSDI payments did not begin until June 27, 2018, she did not receive her SSDI back pay until January 2019, and her daughter did not receive Social Security dependent benefits until December 2019.  *Id.* at 8.

Plaintiff owned two houses, one of which was a rental property and from which she received monthly rental income of $1,695.  *Id.* at 3.  While plaintiff had approximately $1 million in equity in the two homes, she claims she did not have any liquidity in those properties.  *Id.* at 7.

Plaintiff represents that monthly expenses for her and her child totaled $16,705:

| | |
|---|---|
| Mortgage | $2,865/$3,094 (effective 2/1/2018) |
| Rental Expense (Mortgage plus expenses) | $1,817 |
| Food/grocery | $1,491 |
| Medical | $2,309 |
| Insurance | $860 |
| Primary home repair | $1,186 |
| Household/utilities | $1,361 |
| Child expense | $359 |
| Transportation | $166 |
| Clothing (incl. child) | $845 |
| Entertainment/gifts/travel | $807 |
| Personal beauty | $869 |
| Other | $1,770 |

*Id.* at 6.

Evidence also shows that a ████████ bank account bearing plaintiff's name had an average monthly balance of at least $25,000 in 2017 and 2018.  *See* Hans Huggler Decl., Ex. 2, at 53-78, ECF 51.  Plaintiff contends this money constituted life insurance proceeds that belonged to her ex-husband and that she had no rightful access to these funds.  *See* Robert Jordan 2nd Aff. ¶ 3, ECF 62.  Plaintiff's ex-husband also represents that he would not have loaned plaintiff money from these life insurance proceeds so that plaintiff could purchase additional ████████ in Slalom Investments because at that time, plaintiff did not have a sufficient income stream to repay him.  *Id.* ¶ 2.

## V.    Discussion

LINA does not "dispute that this Court has the authority to award prejudgment interest." and "does not oppose an award of prejudgment interest here."  Opp. 2, ECF 49.  However, it asks that any "interest award should be made at the federal funds rate applicable in ERISA cases or, if the Court determines a higher rate is appropriate (and it should not), at the 9% rate applied in Oregon contract cases."  *Id.*  LINA argues that plaintiff had financial means to purchase ████████ in Slalom Investments and that her decision not to is not LINA's responsibility.  *Id.* at 8.  LINA further contends that plaintiff's asserted damages rely on a series of conjectures that cannot support a claim for damages.  *Id.* at 2.  Specifically, ██████ s "returns" are not based on any market pricing mechanism but, rather, ██████ could tell its ████████████ that ████████ ████████ are worth $100, and the Court has no way to ascertain if that price has any neutral basis."  *Id.* at 10.

In *Blankenship*, the Ninth Circuit found the district court did not abuse its discretion by setting the prejudgment interest rate at 10.01 percent where the plaintiff "was forced to replace

the $6,093.82 per month he would have received with his own personal funds" and "[t]hose

funds would otherwise have been invested in a Vanguard mutual fund in which he had already

invested over one half million dollars." 486 F.3d at 628.

Plaintiff cites other cases with similar holdings: In *Doe v. Prudential Ins. Co. of Am.*,

258 F. Supp. 3d 1089, 1093 (C.D. Cal. 2017), the plaintiff presented substantial evidence that he

"relied on his LTD benefits to provide for his daily needs, and that as a result of Prudential

terminating them, he invested less in certain well-performing equities and funds, and that had his

benefits continued he would have invested more in these funds." In *Bosley v. Metro. Life Ins.

Co.*, No. C 16-00139 WHA, 2017 WL 4071346, at *3 (N.D. Cal. Sept. 14, 2017), the plaintiff

was forced to move to another state for more affordable housing. In *H.N. by & through Doe v.

Regence Blueshield*, No. C15-1374 RAJ, 2017 WL 2603587, at *4 (W.D. Wash. June 15, 2017),

the "[p]laintiffs withdrew funds from their retirement investment account, or used funds that

would have been deposited into that account, to pay for H.N.'s medical treatment." In *Harlick v.

Blue Shield of California*, No. C 08-3651-SC, 2013 WL 2422900, at *1 (N.D. Cal. June 3, 2013),

the plaintiff's mother "had to draw down from a home equity line and twice refinance her home

to finance Harlick's care."

As LINA contends, while "[t]here are cases in which the courts have found that the

equities support an award of enhanced interest[,] . . . [t]his is not one of them." Opp. 2, ECF 49.

Plaintiff has submitted documentation showing that her condition—post-herpetic neuralgia—is

debilitating and "makes undertaking basic tasks (for example, bathing, dressing, eating) and

complex activities (for example, travelling, performing household chores, shopping) difficult."

Pl.'s Aff., Ex. B, at 45. These facts are undisputed and undeniably sympathetic. However, the

record shows that plaintiff engaged in a robust level of discretionary spending, and there is a lack

of substantial evidence that plaintiff was forced to forego the $██████ investment "as a result of

[LINA's] nonpayment of benefits." *Blankenship*, 486 F.3d at 628.

      The decision to make investments requires a choice to curtail spending. Some people

choose to spend less and invest more, and some people choose to spend more and invest less or

even nothing at all. Here, plaintiff received $7,500 a month in net spousal support plus $1,695 in

rental income, for a total monthly income of $9,195. She claims that "essential" monthly

expenses for her and her then-nine-year-old child[2] far exceeded her monthly income, totaling

$16,705. Pl.'s 2nd Aff. 5, ECF 61. But while plaintiff's monthly "budget" included less flexible

expenditures such as mortgages and medical expenses, it also included nearly $1,500 in grocery

and restaurant bills, $807 in entertainment, gifts, and travel, $845 in clothing, $869 in personal

beauty, and $1,770 on "other" expenses. Reducing the $5,782 per month (or $69,384 per year)

that plaintiff spent on food, entertainment, gifts, travel, clothing, personal beauty, and "other"

expenses would have yielded the $██████ that plaintiff needed.[3] Then, as plaintiff concedes she

was willing to do, she could have filed her 2017 income tax forms in time to receive her refund

by the March 31, 2018 investment deadline, and spent $██████ of her $34,825.54 tax refunds on

Slalom Investments. Pl.'s Aff. ¶ 13(d), ECF 45.

      Unlike *Blankenship*, plaintiff was not "forced" to use personal funds to make an

investment as a result of LINA's nonpayment of benefits. *See Blankenship*, 486 F.3d at 628.

Nor was she "forced" to forego the investment because of LINA's actions. Rather, plaintiff had

---

[2] Plaintiff's daughter was born in 2008. Pl.'s Aff. ¶ 4, ECF 45.

[3] It is apparent that some of plaintiff's expenditures were for child-related expenses. However, plaintiff attests that her ex-husband deposited $2,500 per month into her account to pay for their daughter's expenses. Pl.'s 2nd Aff. 3, ECF 61. He also deposited money into her account to reimburse her for joint family expenses, such as family weekend trips, school, and camp. *Id.*

the financial ability to make the investment, but chose to use her money in other ways. Such discretionary decisions should not be LINA's burden to bear. As LINA aptly observes, "this is an *equitable* claim, and [plaintiff] is asking this Court to reverse her voluntary financial decisions and pay her tens of thousands of dollars as an-after-the-fact guarantor of investment returns." Opp. 7, ECF 49. "[M]ost, if not all, ERISA plan participants whose benefits are terminated suffer financial setbacks as a result," and here, "plaintiff has not demonstrated that the equities of her situation warrant departing from the 'norm' of awarding interest at the T-bill rate." *Langston*, 2010 WL 330085, at \*9. Given the circumstances, this case lacks substantial evidence that the equities require a rate that is different from that set forth in 28 U.S.C. § 1961(a).[4]

## RECOMMENDATIONS

For the reasons discussed above, plaintiff's Motion for Prejudgment Interest (ECF 42) should be GRANTED IN PART and DENIED IN PART, in that prejudgment interest should be awarded but at the statutory rate set forth in 28 U.S.C. § 1961(a) and not in the amount requested by plaintiff.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Monday, May 10, 2021. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

---

[4] LINA's other arguments possibly also have merit, but it is unnecessary to reach them.
    Additionally, the parties do not discuss this, but it appears the appropriate Treasury bill rate is that in effect during the period for which plaintiff was denied benefits, not the Treasury bill rate at the time of judgment. *See Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994). After final ruling on this motion, the parties can make any necessary interest computations and if there is disagreement, approach the court to resolve it.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED April 26, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge